Filed 4/5/21  P. v. Juache CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRES LEMUS JUACHE,<br><br>    Defendant and Appellant. | 2d Crim. No. B300716<br>(Super. Ct. No. 2016006190)<br>(Ventura County) |

Andres Lemus Juache appeals from the judgment entered after a jury had convicted him of assault with a deadly weapon (a knife).  (Pen. Code, § 245, subd. (a)(1).)[1]  The jury found true an allegation that he had personally inflicted great bodily injury. (§ 12022.7, subd. (a).)  He admitted one prior serious felony conviction (§ 667, subd. (a)(1)), three prior prison terms (§ 667.5, subd. (b)), and one prior "strike" within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(j), 1170.12,

---

[1] All statutory references are to the Penal Code unless otherwise stated.

subds. (a)-(d).)  The trial court struck the prior prison terms and sentenced appellant to prison for 16 years.

At a pretrial hearing, the court excluded evidence of appellant's gang affiliation and prior conviction for brandishing a knife.  Appellant contends:  (1) the prosecutor committed prejudicial misconduct by bringing the excluded evidence to the jury's attention; (2) the trial court gave jury instructions on self-defense that were not supported by the evidence; and (3) the true findings on the prior convictions must be reversed because, before admitting the convictions, he did not voluntarily and intelligently waive his constitutional rights.  We affirm.

*Facts*

Appellant and Daniel R. (Daniel) were in an alleyway outside a bar.  Daniel was drunk.  They got into a fight that lasted about 20 seconds.  Isaiah Lopez, appellant's friend, was present during the fight.  The day after the fight, Lopez told the police that Daniel and an unidentified man "were kind of walking away with each other, . . . and then boom," the man "kind of like tried to hit" Daniel with his right hand.  Lopez "thought" that the man had "socked [Daniel]."  He did not see anything in the man's hand.  In response to the attack, Daniel took a "swing [at the man] and missed."  But when an officer later asked Lopez, "Did [Daniel] throw a punch back?"  Lopez responded, "No.  He kind of, like, pushed him away.  He don't want to fight."  Daniel "stepped back," and Lopez saw "blood coming out right away."  Daniel said, "I got stabbed."  The man "took off."  An officer asked, "[H]ow many times did [the man] hit [Daniel] . . . ?"  Lopez answered, "I don't know.  I didn't even see how many times he hit him.  Once—I saw just one hook and he didn't even hit – it didn't even connect."

2

At trial Lopez identified the man as appellant. He testified that Daniel and appellant were "right next to each other." Lopez saw appellant's "arm go up" and appear to make "a jab that didn't even connect." Daniel "then swung and missed" and "then stepped back." Appellant "didn't swing back at [Daniel] at that point" and "didn't go after him."

Daniel was stabbed in the chest next to his left nipple. To save his life, doctors performed "open heart surgery." It is reasonable to infer that the surgery was required because the knife had penetrated his heart and the wound needed to be repaired.[2]

A blood sample was taken from Daniel at the hospital and tested for alcohol. The blood-alcohol content was a very high .419 percent. A detective who had worked in the traffic bureau had never come across a person with a blood-alcohol content this high. The detective testified that, based on his experience, a person with a blood-alcohol content of .24 percent would be "severely impaired."

Daniel admitted that he had been "extremely drunk." He did not remember anything about the incident outside the bar. Before the incident, he had never seen appellant.

Appellant testified as follows: Daniel was "drunk" and acting like "[a]n asshole, . . . [a] jerk." "He started talking shit and name calling." When appellant tried to defuse the situation,

[2] "Open heart surgery" is "surgery in which the chest is opened and surgery is performed on the heart. The term "open" refers to the chest, not to the heart itself - the heart may or may not be opened, depending on the particular type of surgery" <https://www.nhsinform.scot/tests-and-treatments/surgical-procedures/heart-surgery> [as of Feb. 26, 2021], archived at <https://perma.cc/FN8R-53JL>.

Daniel said, "'Don't tell me what to do motherfucker.'" "[M]ore than once," Daniel challenged appellant to a fight.

Daniel "started advancing towards [appellant]." Appellant "started walking backwards" with his "hands up." He did not know whether Daniel had a weapon, but he believed that Daniel was going to hurt him. Daniel was "continuously . . . making threats and . . . talking shit to me." "[W]hen [Daniel] felt he got close enough . . . , he attempted to swing at me." "He seemed intimidating . . . and he was, obviously, fearless." Daniel never displayed a weapon.

Appellant continued to walk away. Daniel "ended up walking right next to me like he was going with me wherever I was going." Appellant "got scared." He was "having flashbacks" of a previous incident when he had been stabbed in the stomach and had "ended up on my deathbed." Daniel was not the person who had stabbed him.

Appellant reached into his pants pocket and retrieved a pocket knife. He opened the knife. Appellant hoped that Daniel would "back up" if he saw the knife. When Daniel attempted to strike appellant, appellant threw his "hands . . . up in a defensive manner" and unintentionally stabbed Daniel. "[M]y hands just flew up to try to block myself from getting hit." Appellant "was in shock" when he saw that Daniel was bleeding. He "panicked" and "ran."

*Prosecutor's Alleged Misconduct:*
*Introduction of Previously Excluded Evidence*

Before the trial began, the court excluded evidence of appellant's prior conviction for brandishing a knife in violation of section 417. It also excluded evidence of gang enhancements (§ 186.22) found true as to the brandishing conviction and two

4

other prior convictions. The court excluded the evidence pursuant to Evidence Code section 352 (section 352). The court permitted appellant to be impeached with prior convictions for conspiracy to commit carjacking and possession of a firearm in violation of conditions of probation.

Appellant made a pretrial motion to exclude evidence of his affiliation with a criminal street gang. The prosecutor sought to show that appellant "is a documented Barry Street gang member." The trial court initially deferred ruling on this issue. The court later denied the prosecutor's request to admit evidence of appellant's gang affiliation.

Appellant contends that the prosecutor committed misconduct on three occasions by questioning him about or commenting upon his gang affiliation. The first incident of misconduct occurred during questioning about a previous stabbing of appellant by a person named Cervantes. The prosecutor asked if the stabbing had occurred "because of a gang rivalry." Appellant replied, "It could have been a number of elements I guess." The prosecutor asked, "What 'elements'?" Defense counsel objected on section 352 and relevance grounds. The court overruled the objection. Appellant said that he and the perpetrator of the stabbing "never were . . . the same crowd of people." The prosecutor responded, "[I]s that because [the perpetrator] was in one gang and you were in another?" Defense counsel objected on relevance grounds, and the court overruled the objection. Appellant answered, "No."

The second incident occurred when the prosecutor asked appellant, "In your experience, what does it mean to be a 'snitch' or a 'rat.'" The trial court overruled defense counsel's section 352 objection. Appellant replied, "I don't know, it's like a tattle tale I

5

guess." Appellant asserts, "The terms 'snitch' and 'rat' are used predominantly in regard to gang activity."

The third incident occurred during closing argument to the jury when the prosecutor mocked appellant's testimony that he had feared for his safety because "'I've been stabbed in the past so I'm a little bit skittish.'" The prosecutor said, "Is it reasonable to think that just because you were stabbed a few years ago by a rival gang member, that every person who comes up to you is going to try to kill you?" Defense counsel did not object.

Appellant argues, "The [prosecutor's] intent to improperly portray [him] as a gang member, a person of bad character, was clear." "Introducing irrelevant gang evidence to paint a defendant as a person of bad character, particularly in violation of a trial court ruling, is egregious. . . . The prosecutor's conduct obliterated any hope that appellant could be found credible by the jury, or that his defense of self-defense would be believed."

Appellant claims that the prosecutor also committed misconduct by questioning him about his prior conviction for brandishing a knife. The questioning was as follows:

"[Prosecutor:] [Y]ou say that you . . . are particularly more cautious because you had been stabbed before; is that right?

"[Appellant:] Yes.

"[Prosecutor:] But isn't it true that you have actually brandished knives at people before?

"[Appellant:] In a self-defensive manner, yes.

"[Prosecutor:] But you . . . pled guilty, right, to brandishing a weapon at somebody?

"[Appellant:] I did ultimately because [my counsel] told me that someone who has any gang affiliation doesn't – you can't say that you were self-defending for some reason."

"[Prosecutor:] Well, isn't it true that the person that you actually brandished a knife against in that prior was also a gang member?

"[Appellant:] I'm not sure."

During closing argument to the jury, the prosecutor commented on appellant's conviction for brandishing a knife: "This is someone who is not truthful. He pleads guilty and is convicted, but 'I didn't actually do anything wrong.' He stabbed someone, but he didn't actually do anything wrong. He brandished a knife in the past, but it was in self-defense. 'I didn't do anything wrong.' There's a pattern there." Defense counsel did not object.

Appellant argues: "As with the gang evidence, the prosecutor's conduct [as to the brandishing conviction] severely impacted [his] defense in the case, which was self-defense. His credibility, after being portrayed as a knife wielding gang member, was unrecoverable, and he was thus denied a fair trial." "Once the evidence of gang affiliation and the prior brandishing conviction were put before the jury, the trial was essentially over."

Appellant acknowledges that his counsel did not object to the prosecutor's questions or comments concerning the brandishing conviction. Appellant maintains that, in view of the trial court's previous overruling of "counsel's objections to the gang evidence[,] . . . any objection to the brandishing evidence would have been futile and would have served only to further draw jury attention to the testimony." If an objection was required to preserve the issue, appellant argues that he was denied his constitutional right to effective assistance of counsel.

The People assert: "[A]ppellant has forfeited his claim, and has failed to establish that objecting at trial would have been futile or that his counsel provided ineffective assistance. Regardless, appellant has failed to establish prosecutorial

7

[misconduct], in either the prosecutor's cross-examination of appellant or at argument."

"'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion — and on the same ground — the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' [Citation.] [¶] The foregoing, however, is only the general rule. A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile." (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

The issues here raise the following six questions: (1) During cross-examination of appellant, did the prosecutor commit misconduct in questioning him about his gang affiliation and the brandishing conviction? (2) During closing argument to the jury, did the prosecutor commit misconduct in commenting about these matters? (3) Did the trial court err in overruling the objections that defense counsel made? (4) Did appellant forfeit the particular instances of alleged misconduct as to which there was neither an objection, nor assignment as misconduct, nor request for an admonition? Were objections or requests for an admonition excused because they would have been futile? (5) If a forfeiture did not occur, was the prosecutor's misconduct harmless? (6) If counsel's failure to object, assign as misconduct, or request an admonition resulted in a forfeiture, was appellant denied his constitutional right to effective assistance of counsel?

We need not consider these questions. "Prosecutorial misconduct can result in reversal under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct' and under federal law if the

8

misconduct was not 'harmless beyond a reasonable doubt.'" (*People v. Rivera* (2019) 7 Cal.5th 306, 334.) Assuming, without deciding, that the misconduct issues were preserved for appellate review and that the prosecutor committed misconduct, we explain below why the misconduct was harmless beyond a reasonable doubt.

Appellant alleges that his "self-defense claim was his entire defense." Pursuant to CALCRIM No. 3470, the trial court instructed the jury as follows on self-defense: "Self-defense is a defense to assault with a deadly weapon. The defendant is not guilty of that crime if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. *The defendant used no more force than was reasonably necessary to defend against that danger*." (Italics added.) A fair translation of this rule is as follows: You cannot bring a knife to a fist fight, use it to inflict great bodily injury, and successfully claim self-defense.

Appellant testified that the only force he used was to throw up his hands to ward off Daniel's blows: "[M]y hands just flew up to try to block myself from getting hit." In making this movement, he unintentionally stabbed appellant in the chest with enough force to penetrate his heart. This scenario is preposterous. No reasonable juror would have believed appellant's explanation that he had accidentally caused such a grievous, potentially fatal wound by merely putting his

9

"hands . . . up in a defensive manner."[3]

The stab wound to the heart required a powerful blow with the knife pointed at Daniel's chest, not up in the air. The day after the stabbing, Lopez spoke to the police and described the delivery of such a blow. Lopez said that Daniel and another man, whom he later identified as appellant, "were kind of walking away with each other, . . . and then boom," appellant "tried to hit" Daniel with his right hand. Lopez "thought" that appellant had "socked him." "Sock" means "to hit, strike, or apply forcefully" <https://www.merriam-webster.com/dictionary/sock> [as of Feb. 26, 2021], archived at <https://perma.cc/6PX5-CUMC>. When Daniel "stepped back," Lopez saw "blood coming out right away."

Appellant's self-defense claim was eviscerated not by the prosecutor's misconduct, but by the absurdity of his own testimony. The stabbing of Daniel must have been deliberate. Appellant could lawfully use no more force than was reasonably necessary to defend himself. (CALCRIM No. 3470.) Daniel was unarmed and extremely drunk. There was no justification for appellant's resort to deadly force, i.e., stabbing Daniel in the

---

[3] See *People v. Prock* (2014) 225 Cal.App.4th 812, 823: "[T]he federal opinion concluded it was possible the victim 'inflicted the mortal wound on himself as he charged Petitioner, who was holding the knife in his outstretched arm.' Based on the totality of facts and circumstances, and the reasonable inferences that can be drawn from them, we would go even farther. The defense theory was not just 'implausible,' it was preposterous. This scenario would not even work if the victim was Jesse Owens reincarnate, sprinting toward appellant with his chest jutting out, so that a stationary kitchen knife could penetrate six inches into his thoracic cavity and heart."

10

heart. ""[D]eadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury . . . ."" (*People v. Hardin* (2000) 85 Cal.App.4th 625, 629-630; see also *People v. Pinholster* (1992) 1 Cal.4th 865, 966, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459 ["The right of self-defense did not provide defendant with any justification or excuse for using deadly force to repel a nonlethal attack"].)

The harmlessness of the prosecutor's alleged misconduct is supported by appellant's post-offense conduct, which unequivocally displayed consciousness of guilt: 1. He fled the scene of the attack. 2. After using the bathroom in a nearby bar to wash his hands, he wiped his fingerprints from the handle of the bathroom door. 3. He threw the knife away. 4. When deputies handcuffed him hours after the stabbing, he ran and threatened to kick a deputy's "ass." 5. He soaked his shirt in bleach to remove the victim's blood. 6. He denied stabbing anyone and being at the scene of the stabbing. 7. When a detective told him that a surveillance camera had captured video of him at the scene, he responded, "Well, if I stabbed anybody it was in self-defense." Appellant's false exculpatory statements "cogently evidence consciousness of guilt." (*People v. Osslo* (1958) 50 Cal.2d 75, 93.) Consciousness of guilt is also evidenced by his flight (*People v. Johnson* (2015) 61 Cal.4th 734, 774), removal or destruction of evidence (*People v. Wong* (1973) 35 Cal.App.3d 812, 831), and resistance to arrest (*People v. Garcia* (2008) 168 Cal.App.4th 261, 283-284).

*Jury Instructions on Self-Defense*

Appellant claims that the trial court erroneously gave CALCRIM Nos. 3471 and 3472, which "prejudicially undercut"

11

his theory of self-defense. No. 3471 instructs the jury on the right of self-defense of a person who engages in mutual combat or who starts a fight. No. 3472 provides, "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." Appellant argues that the instructions are not supported by substantial evidence. "Generally, '[a] party is not entitled to an instruction on a theory for which there is no supporting evidence.'" (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

Substantial evidence supports the instructions. According to Lopez's statements to the police, appellant started the fight when he "socked" Daniel with his right hand. An officer asked Lopez, "[D]id [Daniel] throw a punch back?" Lopez responded, "No. He kind of, like, pushed him away. He don't want to fight." A reasonable jury could conclude that appellant was the aggressor.

Even if the instructions had been given in error, the error would have been harmless beyond a reasonable doubt.[4] As we

---

[4] The applicable standard of review, however, is the less onerous *Watson* test. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Appellant mistakenly claims that *Watson* is inapplicable because his "federal constitutional rights were violated by the instructional errors." In *People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130, our Supreme Court stated: "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case. [Citation.] If . . . that is the only error, it does not appear to be of federal constitutional dimension. . . . [¶] The error is therefore one of state law subject to the traditional *Watson* test [citation] applicable to such error. [Citation.] Under *Watson,* reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred."

explained in the preceding part of this opinion, there was no justification for appellant's use of deadly force against Daniel. If CALCRIM Nos. 3471 and 3472 had not been given, the jury would still have rejected appellant's claim of self-defense.

*Appellant's Admission of Prior Convictions*

After the jury had found him guilty of assault with a deadly weapon, appellant admitted the prior convictions. He maintains that the true findings on these convictions must be reversed because he did not voluntarily and intelligently waive his constitutional rights. Appellant faults the trial court for not advising him of "the right to remain silent, the right to testify, and the right to confront witnesses." Appellant concedes that he was "properly advised of and waived his right to a jury trial" on the prior convictions.

The controlling authority is *People v. Mosby* (2004) 33 Cal.4th 353 (*Mosby*). There, our Supreme Court noted that 30 years earlier it had held "that before accepting a criminal defendant's admission of a prior conviction, the trial court must advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses." (*Id*. at p. 356.) In *Mosby* the court held that "[w]hen, immediately after a jury verdict of guilty, a defendant admits a prior conviction after being advised of and waiving only the right to trial," the admission can be found to be voluntary and intelligent "if the totality of circumstances surrounding the admission supports such a conclusion." (*Ibid*.)

The court decided that, although the defendant in *Mosby* had been advised of and waived only his right to a jury trial on the prior conviction, his admission of the conviction was

13

voluntary and intelligent under the totality of the circumstances. (*Mosby*, *supra*, 33 Cal.4th at p. 365.) The Supreme Court adopted the following conclusion of the Court of Appeal: "'[Defendant] knew he did not have to admit [the prior conviction] but could have had a jury or court trial, had just participated in a jury trial where he had confronted witnesses and remained silent, and had experience in pleading guilty in the past, namely, the very conviction that he was now admitting.'" (*Ibid.*)

Like the defendant in *Mosby*, appellant had also just participated in a jury trial where he had confronted adverse witnesses. Unlike the defendant in *Mosby*, appellant had elected to testify at the jury trial. He therefore must have known that he had a right to testify at a trial on the prior convictions. Appellant acknowledges that "it appears that [his] prior convictions were the result of guilty pleas." Before he pleaded guilty in the prior proceedings, he should have been advised of his constitutional rights. "[P]revious experience in the criminal justice system is relevant to a recidivist's "'knowledge and sophistication regarding his [legal] rights.'"" (*Mosby*, *supra*, 33 Cal.4th at p. 365, fn. omitted.) Considering the totality of the circumstances, we conclude that appellant "voluntarily and intelligently admitted his prior conviction[s] despite being advised of and having waived only his right to jury trial." (*Ibid.*, fn. omitted.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

I concur:


GILBERT, P. J.

14

GILBERT, P. J., Concurring.

I write separately to emphasize that defense counsel provided competent representation for Juache. The trial court's ruling on the in limine motion to disallow cross-examination on gang affiliation was based on Evidence Code section 352 grounds. And that was the basis for defense counsel's objection.

The trial court's overruling defense counsel's motion could have reflected a change of mind concerning its earlier in limine ruling.

Whether or not this was the reason for the trial court's ruling, it would have been better practice for the prosecution to have approached the bench and made appropriate inquiry before launching into cross-examination concerning Juache's gang affiliation. However absurd it considered his defense, the prosecution could have faced the risk of a mistrial.

NOT TO BE PUBLISHED.

GILBERT, P. J.

1

TANGEMAN, J.:

I respectfully dissent. The trial court excluded evidence of appellant's prior conviction for brandishing a knife because it would be unduly prejudicial. (Evid. Code, § 1101, subds. (a) & (b); *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049; *People v. Koontz* (2002) 27 Cal.4th 1041, 1083.) The trial court excluded evidence of appellant's gang affiliation for the same reason, and because this was not a gang-related crime. (*People v. Hernandez*, at p. 1049; *People v. Williams* (1997) 16 Cal.4th 153, 193.)

The prosecutor openly defied these rulings. When appellant testified, the prosecutor asked if appellant had been stabbed in a prior incident "because of a gang rivalry," or in a separate question, whether it was because the perpetrator of that stabbing "was in one gang and you were in another." Appellant was asked whether he had ever "pled guilty . . . to brandishing a weapon at somebody" and later was asked whether "the person that you actually brandished a knife against in that prior was also a gang member."

In closing argument, the prosecutor mocked appellant's testimony that he feared for his safety "just because [appellant was] stabbed a few years ago by a rival gang member" and reminded the jury that appellant had "brandished a knife in the past."

This was misconduct, plain and simple. (*People v. Bell* (1989) 49 Cal.3d 502, 532 [misconduct to deliberately elicit inadmissible prejudicial answers].) Yet the majority avoids reversal by labeling it as harmless. To reach that result, the majority emphasizes some evidence, downplays or ignores other evidence, and usurps the function of witnesses and the jury.

1

The case was not a slam-dunk, as the majority conclude. There were three witnesses to the confrontation:  the victim, who was impossibly drunk (with blood alcohol exceeding .419 percent) and had no memory of the incident; appellant, who testified that the victim was the aggressor and that he displayed an open pocket knife to dissuade the victim and accidentally stabbed him when he suddenly raised his arms to deflect the victim's blows; and a third party, who was "pretty intoxicated" and said that a dumpster obstructed his view of the fight and he did not see how it started, but he observed both parties take "swings" at each other but did not see a knife.  Appellant acknowledged seeing blood flow from the victim's chest after he struck the victim with the knife, and said he panicked and attempted to remove any evidence of his involvement.

Appellant admitted stabbing the victim, relying exclusively on the theory of self-defense.  Without direct evidence of how the fight started, and the lack of eyewitnesses, the trial boiled down to a test of appellant's credibility.  This became the critical issue for the jury to resolve.  The trial court properly excluded gang evidence and the prior brandishing conviction precisely because of its unduly prejudicial impact on appellant's credibility—after all, why should jurors believe a known gang member previously convicted of unlawfully brandishing a knife to threaten another?

Viewed in this light, the introduction of appellant's gang affiliation and prior conviction for brandishing a knife, through repeated questions and commentary in closing argument, strongly suggests that such evidence cannot be deemed harmless as a matter of law under the circumstances extant here.  (*People v. Memory* (2010) 182 Cal.App.4th 835, 864 [reversed because inflammatory evidence of gang membership and propensity for

2

violence impaired credibility of self-defense testimony].)  Yet the majority avoids any meaningful harmless error analysis by the simple expedient of labeling appellant's testimony as "preposterous."  Without citation to any evidence, the majority concludes that "[n]o reasonable juror would have believed appellant's explanation" because the blow to the victim's chest "required a powerful blow" that "must have been deliberate."  Where is the evidence that supports this factual finding?  Is the majority acting as both an expert witness and the jury?

In an attempt to overcome this lack of analysis, the majority relies on its claim that "[y]ou cannot bring a knife to a fist fight" to support its conclusion.[1]  Although perhaps superficially appealing, this slogan is not the law.  Instead, the principles of self-defense allow use of force reasonably necessary to defend against the danger.  (See Pen. Code, § 417, subd. (a)(1) [exhibiting deadly weapon in threatening manner, or using deadly weapon in a fight, prohibited "except in self-defense"].)  Use of a deadly weapon is permitted in response to an assault with fists likely to produce great bodily injury.  (CALJIC No. 5.31; *People v. Hood* (1969) 1 Cal.3d 444, 451.)  The rule espoused by the majority here leads logically to an unintended consequence by putting all those at risk who, when confronted by aggressive

---

[1] The expression reverses the meaning of the adage "Don't bring a knife to a gunfight," popularized in films including The Untouchables (Paramount Pictures 1987) and The Punisher (Lions Gate Films 2004).

3

assailants in a threatening manner, dare to expose a pocket knife to deter another from inflicting imminent harm.  That's not consistent with existing law.  I would reverse.

NOT TO BE PUBLISHED.


TANGEMAN, J.

4

Michele M. Castillo, Judge

Superior Court County of Ventura

_____

Linda L. Currey, under appointment by the Court of
Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Senior
Assistant Attorney General, Steven D. Matthews, Supervising
Deputy Attorney General, J. Michael Lehmann, Deputy Attorney
General, for Plaintiff and Respondent.